Good morning, Your Honors. Anthony Bornstein, Assistant Federal Defender, on behalf of Mr. Gonzalez. I'd like to save two minutes for rebuttal, please. Your Honors, this habeas corpus case comes before you in the Strickland ineffective assistance of counsel context, but it is also very much about the right to a fair sentencing and a sentence imposed by a fair tribunal. And it also raises counsel's obligation when faced with a sentence that is imposed by a biased tribunal, one that is unfair and which relies on unsourced supposed expertise that comes in kind of a secret bubble of definitive expert opinion. Your Honors, I relied on two cases, among others, in my brief, Strickland itself and Townsend v. Burke, on the right to a sentence based on — that is not based on misinformation. But there's a couple of passages in those opinions that I think warranted more emphasis than I placed in my brief, and which I'd like to just take a couple of minutes to underscore for the Court because they bear so directly on the resolution. Townsend was a pre-Gideon case where the counsel was unrepresented and the sentencing court relied in imposing the sentence on what he thought were three prior convictions. It turns out two of them were the subject of acquittals. A third one had actually been dismissed, yet the Court relied on them as thinking they were valid prior convictions. In discussing counsel's duty when made aware or when counsel should have been aware of those defects in the convictions, the Court at page 740 of Townsend wrote that counsel, had any been present, would have been under a duty to prevent the court from proceeding on such false assumptions and perhaps under a duty to seek a remedy elsewhere if they persisted. And that is exactly our claim on the performance prong, that when the judge announced out of the blue this supposed opinion from a supposed FBI profiler or other expert should have registered an objection, should have asked for at least a continuance to get information about that expertise. Was it relied on? Was it based on studies? Who is this expert? What are they relying on? And the like. Should have asked for a recusal if necessary. Would have at least preserved the issue for appeal if the Court was going to go forward with it anyway. So what was the ultimate prejudice? The prejudice? What is the prejudice? Ultimate prejudice. Pardon me, Judge? What was the ultimate prejudice here? You still have to show prejudice. Yes. So I have to show prejudice. But the result would have been different. It would have gotten a different sentence.  So he was prejudiced by a sentence imposed by an unfair partial tribunal. The judge imposed the sentence that the DA recommended. It's not a question of the fact that they what the Court actually imposed on the sentence. Was that a sentence that the parties had agreed to recommend to the judge? Well, the Court did follow the DA's recommendation. There's no question about that. The trial counsel was seeking and defense counsel was seeking a sentence below that. And under Oregon law, could have imposed a sentence less than that ultimately selected by the judge. Could have imposed, for example, partially consecutive or partially concurrent sentences. And as we know from Glover, any amount of additional jail time has Sixth Amendment significance. And that's what the heart of our argument is, is that had Mr. Gonzalez been sentenced by a fair tribunal, one who was not tainted by this supposed FBI expert opinion, a very dubious merit and value, he could have, and there's a reasonable probability that he could have received. But when you say a reasonable probability, I mean, the judge was basically saying I know certain things, I might believe certain things. So, you know, left to my own devices, he wouldn't be getting this lower sentence. And he actually said that. He said something to the effect my own inclination would be to go against the prosecutor's recommendation. So it's hard to say that there's this probability that, but for what the, you know, counsel didn't jump up and object, that you would have had a different result. Well, I'd like to answer that this way, Your Honor. This was a judge who began the proceeding, who was heavily influenced, we know, from pages, particularly ER 73 and 74, where the judge thrice relies on expertise or supposed expertise, very influenced by this expertise that is brought into the courtroom without advanced knowledge, without advanced warning. So we start with that understanding, and that's where the second passage that I would like to relate to the Court comes into play. It's in Strickland itself, at pages 695. And what the Court there said is that the assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. These, and it should not depend on the idiosyncrasies of the particular decisionmaker such as unusual propensities, which is what we have here, toward harshness or leniency. These factors are irrelevant to the prejudice inquiry. All right. Those factors are relevant, but still, I think the State courts and the district court here, you know, went through all the factors that were on the record that were considered by the trial judge, and one of the factors that Judge McEwen pointed out was in spite of, you know, his overt expression that, you know, he thought a higher sentence was deserved, he still went with the government recommendation. Now, so because of all that, the district court came to the conclusion that it was a reasonable interpretation of Strickland. It doesn't have to be correct. It just has to be reasonable. Now, why isn't it reasonable? It is unreasonable because, one, I think the Court applied the wrong standard. It kind of came at it as, well, he got a good deal, so there's no prejudice. That's not the inquiry. The inquiry is, had this misinformation or unknown, undisclosed information not been before the Court, not influenced the Court, or not likely influenced the Court, is there a reasonable probability of a lesser sentence? It's not whether he got a good deal from the plea bargaining stage. We know that this judge. Kennedy. And that's what the State court weighed and said, no, there isn't. Now, isn't that a defensible, defensible conclusion? Counsel may. Even though you may not agree with it? A piece of counsel's representation may have satisfied Strickland. In securing the plea bargain that he did, that may have been reasonable. That does not end the inquiry, and it doesn't end counsel's obligation. It's what's counsel's obligation at the imposition stage, the sentence imposition stage itself, and what is counsel's obligation to preserve the record, to preserve challenges for review, seek recusal if necessary, seek a continuance to rebut information. Kennedy. No, wait. Just a minute, though. Just a minute. You haven't raised, you know, all of those possible shortcomings in your petition in the Federal court. The only one you raised was his reliance on this extraneous expert testimony. I would respectfully. In other words, you're not contending that counsel should have recused the sentencing judge? I would respectfully disagree. I think in our brief we point out the various remedies and curative steps that the court, that counsel should have pursued. And the issue of bias permeates the PCR court proceedings. Don't you say, I don't have it in front of me, express in your brief that you are not raising the trial judge's recusal? It's a failure to object is the central aspect of our case. And I want to kind of bring myself back and bring the Court back to that. It's a failure to object to this reliance on the expert's opinion. Right. And just addressing Your Honor's question regarding prejudice, that, well, he got kind of the deal that was presented. The judge was inclined to go higher. Again, we know that this judge was heavily influenced by this expert's opinion. And I would like to just quote one other passage from Townsend that I think speaks to that. Just a minute. How do we know he is heavily influenced? It seems like the record shows he wasn't because he didn't go with that, with that, you know, line of reasoning. But he accepted the government's, you know, recommendation. Again, he may have had the leap. So how do you know he was heavily influenced? I submit that that is contained in a more than reasonable inference from ER 7374, which is the sentencing judge remarks where he twice refers to this supposed opinion as an expert and then discusses unknown other experts that he's either spoken to or heard from or somehow become aware of. So he's very influenced by expert opinions. And that's clear from the transcript of his sentence of the sentencing proceeding. And I just am running out of time here. But again, I'd just like to point out in Townsend at 740 of the U.S. reports, the court there said, We are not at liberty to assume that items given such emphasis by the sentencing court did not influence the sentence which the prisoner is now serving. Thank you, Your Honor. Thank you. Thank you. Good morning, and may it please the Court, Counsel Greg Rios for Superintendent Mark Knuth. This Court should affirm the district court's denial of habeas relief because Petitioner has not established that the state post-conviction court unreasonably applied Strickland. And at the outset, I think it's important to kind of pinpoint exactly what claims that Petitioner raised in the state post-conviction court because that's really the proper focus and not what other claims may have come up later on in the course of the habeas briefing and on appeal. And the claim that was presented to the post-conviction court was that counsel should have objected to these unidentified experts' opinion, the reading of it, and should have produced a rebuttal expert to address that testimony. Nothing was mentioned about recusal in the post-conviction petition. Petitioner submitted a pro se trial memorandum and tried to introduce the issue at that point, but settled Oregon laws that you have to plead the claim in the post-conviction petition. So the court found that he didn't, the state post-conviction court. The district court noted that. So that claim is procedurally defaulted and off the table. And perhaps that may have been, for reasons argued in the brief, I don't think that's a winning claim, but perhaps that may have been the most appropriate claim under the circumstances and that is not before this Court. So the question is whether some other evidence should have been presented, whether counsel is ineffective for not doing that, and whether the lack of that evidence changed the outcome or a reasonable probability that a different sentence would have resulted had that been done. Well, as an initial matter, you have to, if you say that an expert's opinion should have been introduced, you have to introduce the contents of that petition in the collateral proceedings. So that was never done here. That is an easy way for this Court to conclude that there was no Strickland prejudice or that the determination of Strickland prejudice was not, lack of Strickland prejudice was not unreasonable on the part of the state post-conviction court. But going further and even assuming that the more traditional prejudice analysis, which is but for the purported ineffectiveness, there would have been a different sentence would have resulted, here we have a trial court who was quite upset about the number of victims that Petitioner had within his own family that came out as a result of the psychosexual evaluation and the egregious nature of the abuse to this particular victim, Petitioner's 12-year-old granddaughter. And that is what the Court started with. The Court did not start with this opinion. The first comments out of the Court's mouth is, look, you've abused five members of your family, and you've touched your granddaughter up to 20 times. And then the report was referred to, and I believe the report was most likely referred to because a lot of the, a lot of family members of Petitioner came up and said that he could do well with treatment. The judge was obviously, the trial court was obviously skeptical of that proposition. And so this was one of the things the Court mentioned in support of that skepticism. The Court didn't just mention that, though it also mentioned its years hearing prosecution and defense experts testify about sex offenders and their amenability to treatment. So that report wasn't even the sole basis for the trial court's skepticism about the potential of Petitioner to be successful in treatment. What discretion did the judge have in his, in the sentencing possibilities? The discretion the Court had, and I think it's, I'm going to correct my brief a little bit. I think in the brief I said it was only 75, 150, or 225. It is true that there could have been a partially concurrent sentence that could have been anywhere from 75 months to 150 months. Total. Total. So the total the trial court had to work with, if it was an entirely consecutive sentence, was 225 months. I see. There are 75 months for a single touch? Of sex abuse, one, yes. And they were all, and this is an undisputed fact, that they were all separate. So the way our consecutive sentencing statute works is the presumption is that they are going to be concurrent, however, certain circumstances are present, such as the trial court has essentially unfettered discretion subject to, you know, constitutional constraints. But what is the 75 months? Is that the minimum, the maximum, what? Seventy-five months would be the maximum for a sex abuse one. Seventy-five months is the mandatory sentence for that offense. Is there any way he could have imposed a 75-month sentence, a lawful 75-month sentence under Oregon law? Yes, he could have, because I believe that the plea petition was such that the recommended cap on the state's end was going to be 150 months, and the defendant was free to argue for a fully concurrent sentence, which would be 75 months. Now, at no time, I know there's a lot of talk about treatment, but at no time would treatment be an option. Now, the defendant did press an argument that it was unconstitutionally disproportionate in a sentencing memo, but did not really pursue that at sentencing, basically said, I'm just putting it out there to preserve the record for appeal. So that would be the only way they could get to a treatment sentence or an optional probation sentence was if the judge would have considered the sentence unconstitutional and then gone to the state sentencing guidelines from there. Thank you. That's helpful. Thank you. So it's the superintendent's position that the proper analysis, the question of ultimate prejudice, is whether but for the admission of this unidentified FBI's experts' article, that the trial court would not have reached that same sentence, and that State Post-Conviction Court correctly found that there was no prejudice because the trial court was concerned with much more than the offender's amenability to treatment. The trial court was more concerned with the egregiousness of the offense, the pattern of abuse over this offender's lifetime, and the fact that the offender's family had come in and all-sided with Petitioner over the minor victim. And unless the Court has any further questions, we just ask that you affirm the district court. Thank you. I think you're out of time, but I'd like to give you another minute for rebuttal. Thank you, Your Honor. I think there's an implication from counsel's argument that the only aspect of the sentence that the expert influenced or had impact on was amenability to treatment, and that is just not correct. The expert, if he even is that, and we do not know. They call it an FBI article. They call it an FBI opinion. We don't even know that. We don't know the actual source of this and what the qualifications were. But be that as it may, the expert or supposed expert talks about the incorrigibility, the inherent evil of people who commit this crime, and that impacts the duration of sentence. It's not either-or. It didn't have to be 150 months or 225 or 75. It could have been somewhere under the sentence that he received and over the minimum, which was 75. Again, under Glover, any amount of additional jail time has Sixth Amendment significance, and if he had a fair judge, an impartial judge, there's a reasonable probability it would have been less. And Your Honor mentioned what remedies we had in our brief. I'll just close with this. We said there were various remedies that counsel, corrective actions that counsel should have sought. They're on pages in our summary. Let me just ask you one question. Do you disagree with your colleague's statement, which was also echoed, I think, in the district court and the PCR court, that this issue of impartial judge was not actually raised in the prior petitions? I disagree. In the petition itself. Can you give me a citation? Yes. In the petition itself. Let me just say this. Okay. You don't have to do it now, but you've extended your time. We have some pieces of paper where you can provide supplemental citations. Yes. So you could provide it to us and to the State's counsel, and I would appreciate that. Thank you, Your Honor. Thank you. The case just argued is submitted. Gonzales v. Newth. Both counsel, I thank you for your arguments this morning. We'll next hear argument in Carlos v. Patten-Advie and Felix.
judges: Tashima, McKeown, Paez